Good morning. May it please the Court, I'm Robert Jobe, and I'm appearing today on behalf of the plaintiff's appellants, Dharam Singh and his brother Sukhwinder Singh. Can you pull the mic a little closer, please? Dharam Singh is a United States citizen. His brother, Sukhwinder, is an Indian national who, at this point, finds himself in removal proceedings in San Francisco before an immigration judge in which he was attempting to apply for adjustment of status. But his effort to apply for adjustment was thwarted because the State Department some years ago had terminated his registration as an intending immigrant. In our view, this case turns on how we interpret Section 203G of the Immigration and Nationality Act. And our fundamental problem with the district court's decision is that the district court never actually interpreted or made any attempt to interpret that provision of law. Instead, what it did is it looked at the State Department's actions here and assessed whether, more or less in the abstract, it could be considered arbitrary or capricious. And we think that's incorrect because the starting point here is how do we interpret Section 203G, which says simply that the Secretary of State shall terminate the registration of any alien who fails to apply for an immigrant visa within one year following notification to the alien of the availability of such a visa. Now, in this case, it's undisputed that the State Department had an address from Sukhwinder Singh. He had provided them with his home address in the village. His wife continues to reside there. She's resided there throughout the entirety of this process. But it's also undisputed that the State Department never attempted to contact him at the address that he had provided. What happened, rather, is that the State Department sent the essential correspondence here under Section 203G to an attorney named Gordon Kwan in Houston, Texas. And that attorney came into this case because he had been retained by Sukhwinder Singh's brother, Dharam Singh, in order to file the initial paperwork. It's an I-130 petition that gets this whole process started. But there's no evidence at all that Mr. Kwan ever entered an appearance with the Department of State. There's no evidence that he ever submitted any paperwork on behalf of Sukhwinder Singh with the Department of State. And he himself in his sworn affidavit says that there was never any attorney-client relationship between him and Sukhwinder Singh, the visa applicant. The relationship that he had, the attorney-client relationship, was between him and the petitioner, Dharam Singh. So, at bottom, what we have here is a situation where the statute plainly provides that you can terminate or must terminate only after notification to the alien. The State Department had the alien's address. They did not attempt to contact him at that address. They instead contacted a lawyer who had represented the petitioner, an independent person in this proceeding, some years before. And it's our view, therefore, that under the plain language of the statute, termination was inappropriate. So I think to get where you want to go is we would have to read to the alien as specifying it must be to the alien without exercising judgment about how best to get to the alien. And Magistrate Judge Brazil went through this long analysis of why it was reasonable to think that the most reasonable way to get to the alien was through sending it to the brother or to the brother's attorney since they were the ones who had initiated the action on their behalf. So how do we move from that judgment, if it were the judgment, to the statute to say you shouldn't have sent it to the last known address of the alien? I think the normal way we would read something like this, the common sense way, is that notification to the alien would be notification to the alien at whatever address the alien has provided you to send it to. Now, in this case, if Mr. Singh, for example, had said send all correspondence to Gordon Kwan, he's going to act as my attorney in this case, well, for purposes of this proceeding, that would be his address and notification to the alien would be sent to that address. But there's no evidence that that ever happened. Mr. Jobe, just a purely mechanical question. Yes. How does the alien communicate his address? Well, in a couple different ways. Is there an application? Is there a form or something that he's got to return? Both. Initially, the I-130 petition that's filed by the petitioner, in this case that's filed by Dharam Singh, that form, and we submitted copies of the old form and the current form with the Court yesterday, but that form lists, asks you to ask the petitioner to list both his address, the petitioner's address, but always the last question on that form, and it's been this way for decades, really, is that you have to identify, the petitioner has to list the beneficiary, that is the visa applicant's address abroad. And so right from the get-go, the former INS, and now the Department of Homeland Security, has the visa applicant's address abroad. Now, nowadays, when these things are transferred to the National Visa Center, the National Visa Center also sends out a form to the visa applicant that can be signed only by the visa applicant. Nobody else can sign that form. And the purpose of that form is to identify whether the visa applicant wishes an agent to be acting on that person's behalf. That agent can be a lawyer, it can be a friend, it could be the visa applicant himself. But only the visa applicant can sign that form, and the visa applicant, by doing so, identifies, you know, where you want correspondence sent and who's going to be acting on your behalf, if any. And so did your client do that in this case? No, he did not. Or just the first, just the first, just the I-30 petition? Just the I-130 petition. There was never any indication in this case that he asked anybody to act on his behalf, in terms of the actual visa applicant. No, no, no. But I mean, did he return a form to the National Visa Center? In this case, Your Honor, there's no evidence that any such form was ever sent to him. Okay. And so there's no evidence that there was. Yeah. Okay. But is the – but was an I – did the I-30 petition identify him at his address in the porn job? The I-130 petition has been destroyed. The evidence of the record on this point, Your Honor, is set forth in some e-mail correspondence between the government lawyer who's representing – the lawyer who's representing the government in Mr. Singh's removal proceedings and certain persons at the embassy. This is on page 112, it looks like, of the excerpts of record. And there you'll see on page 112 in that e-mail correspondence, the embassy says, per our records, Sukhwinder Singh's address was, and it lays out his address in Punjab. Right. And then it goes on to say the lawyer's name and address is Gordon Kwan. They clearly were treating Gordon Kwan as his attorney of record in this case, but there's absolutely no evidence to indicate that Gordon Kwan ever entered an appearance on his behalf or that Mr. Singh ever indicated that this person was authorized to operate as his attorney. It's our – I mean, I think also if you look at the government's brief, they don't claim that there was actually any attorney-client relationship between Sukhwinder Singh and Mr. Kwan. Rather, their claim is essentially that Mr. Kwan, who was operating as Dharam Singh's lawyer, was furthering the efforts of Mr. Sukhwinder Singh to obtain a visa, and in that way we should be able to recognize him as his attorney. But the simple fact of the matter is that no one – there is no attorney-client relationship here. Sukhwinder Singh never authorized this man to make any representations on his behalf before the embassy. There's no evidence that he ever did. The address that was provided, the only address that was ever provided by Sukhwinder Singh, is the address that's, you know, set forth here in Punjab, and it's undisputed that the government made no effort to contact him at that address. I want to make one sort of important point. I'm not suggesting that the State Department can't communicate with other people in the process of processing these visa applications. I'm not suggesting that the Court should attempt to hinder them in any way in that respect. What I am suggesting, though, is that if it gets to the point where the State Department wishes to terminate an individual's visa registration, they have to, at a minimum, make some effort to send the required notice to the address that that alien provided, rather than to some third party of their choosing. They should not be able to choose for the alien where that notice is sent. If the alien provides an address, the State Department, before they terminate this person's registration, has an obligation to make some effort to contact that person at that address. If they do so and that alien doesn't respond, well, fine, you can terminate that person's registration. But these visa registrations, this is a fourth preference visa petition. That's a U.S. citizen sponsoring a brother, a sibling. Nowadays, if you were to file that sort of petition, you're looking at a 20-year waiting period, 20 years. In this case, it was 12 or 13 years for the visa to become available. Somebody waits 12 or 13 years to have their registration terminated in this fashion, that's just not fair. I mean, if you're going to terminate somebody's visa registration, somebody who's been waiting more than a decade to be able to immigrate to this country, you have to at least make some effort to send the notification that that's a possibility to the address that the alien provided. Kagan. So is the, yeah, is the alien ever advised along the way that he has an obligation to keep his address current? Nowadays, that happens through the National Visa Center. In days past, in the context of this case, I think that actually would have been done by the embassy in India. But nowadays, yes, that's handled by the National Visa Center, and that's that form that I was telling you about before. They send that to the alien. The alien determines who they, that person wants to represent him or her as agent. And if the person is going to change his or her address according to the Foreign Affairs Manual that's cited in the brief and it's also cited in the district court's decision. Oh, I know the Foreign, I know the manual says that. My question was whether the alien himself is ever advised that he must keep his address current. Nowadays, the answer to that is yes. In the timeframe that we're talking about in this case, Your Honor, I don't know the answer to that question. Okay. Thank you. Okay. Thank you. Thank you, Your Honor. May it please the Court. Good morning, Your Honor. My name is Melanie Kuyper, and I represent the Department of State in this matter. Your Honors, this Court should uphold the district court's decision granting the motion for summary judgment for two reasons. First, that the decision or the notification to Attorney Quan in this case was not arbitrary and capricious under the Administrative Procedures Act. And second, that even if the notification was flawed in some manner, that constitutes harmless errors, as it was the duty of Mr. Sukhwinder Singh to let the State Department know what his current address was. Well, wait a minute. Wait a minute. That's where I have problems. You had the record. Do you accept the record that there was an address that had been provided for Mr. Singh? Your Honor, we can presume that that was the case. However, because we do not any longer have the I-130, because it was destroyed pursuant to the regulation, that entire file, we don't know that for certain. Okay. So for purposes of this appeal, we must assume that there was a currently on-file address somewhere at the Department of State that associated the Punjab home address, and there was nothing to indicate that it wasn't a current address. Correct, Your Honor. And so to avoid all of the ramifications that I have high regard for Magistrate Judge Brezil, but there's a lengthy disquisition in the opinion about all of the problems of trying to decide whether somebody, what the nature of an attorney-client relationship is and so on and so forth. And as I read that, I said to myself, we wouldn't be here on this if the State Department had done what it tells petitioners, I've noticed in a lot of other cases we get, that they are responsible for letting the DHS, or now in this case State Department, know what their personal address is. And if they change, it's their duty to advise. But if they haven't, a mailing then to the address on file is presumptively the correct way to reach the alien. And I do not understand why you wouldn't, as a matter of your own self-protection and avoid all of this dispute, send it to the address that he furnished. If he has moved and failed to notify, that's his problem and you can say you fell down. Now we're debating on whether the State Department made a reasonable alternative decision. It may or may not have been, but I just wonder why in this case the statute doesn't, where it says send it to the alien and you have an address for the alien, the statute doesn't say you have a discretion to kind of find another method which we can rationalize, but the statute says get it to the alien and when the consequence is when he doesn't pick up on it, he loses his right to this visa. It just seems the consequences in this case are very disastrous. Now there may be lots of reasons why in equity or whatever else he might not be entitled to it, but you did have an address. And I have trouble saying it's not arbitrary and capricious for the agency not to have sent, particularly when the manual says deliver the materials to send them to the alien, not to his attorney, not to somebody else. With regard to that, Your Honor, unfortunately the only record that we have to rely on comes from the database that the State Department still maintains. So it could have been that there, that it was sent to the Punjabi address. We simply don't have that information. However, I would point to, Your Honors, that according to Attorney Kwan, he sent at Mr. in 2000 stating that this is the update on your case and your number's not ready yet, but it presumably should be coming up soon, and that was in 2000. According to the declaration from Mr. Sukhwinder Singh, he also never received that correspondence from Mr. Kwan. So presumably even if the State Department had sent something to the Punjabi address, which he indicates is still his wife's address, he may not have received that either. And, Your Honor, if I could just point to the fact that Mr. Singh did have a duty to update his address with the State Department. Whether or not that was on the actual form or not, we don't know at this point. But under the Foreign Affairs Manual, it is incumbent upon an applicant to provide the post-occurrent address. And that only makes sense in cases like these that we're talking about fourth preference visas that in this case was 12 years before the address. What's wrong with him continuing to use his Punjabi family address as his current address? Because that wasn't his current address, Your Honor. By all accounts, he came to the United States in either. I understand, but, you know, students go away to college, and they'll leave their home address as their mailing address because they're going to be moving around. So why couldn't he legitimately decide rather than, I mean, understand the circumstances here illegally? But so long as it's an address from which he can get the mail, why isn't that? Where does it say it has to be where he currently resides? It doesn't say you have to provide your current address where you can receive mail? It could be a post office box for that matter, couldn't it? It could be, Your Honor. And it says their current address. But we would submit to you, Your Honor, that once he came to the United States illegally in 1990 or 1991, it was ‑‑ it would behoove him, once he was put into removal proceedings in 1994, it wasn't a secret he was in this country anymore illegally. From 1994 up until 2005 when he filed his I-485 to adjust status, he was in the United States. He knew that the big G government knew that he was in the United States. Counsel, I don't understand where this is going. What's the point? You didn't make the decision. We're assuming for, I believe, on this argument, they didn't send it to the address that they had. There was nothing of ‑‑ they had, as far as I understand, the State Department didn't have any knowledge that somehow, you know, it was in the United States and the reason they chose to send it to the attorney, Kwan, was because they knew he no longer was in Punjab. That's what I don't understand. So all of this rationalization that we're having to go through as to why it might be reasonable doesn't make any sense. They had an operative address which he claims would have ‑‑ the mail would have gotten to him, but for your suggestion that when Kwan tried it, it didn't get to him. But that would be a different case. Then you'd say, look, we sent it to him. He claims he didn't get it. Well, you know, we see those cases all the time about how the BIA decision didn't get to the petitioner. That's why they didn't file. It didn't get to the lawyer. That's why we have lots of law on that. And yet here we are trying to rationalize why the State Department decided to pick an alternative method of communication. Now, I agree. If it didn't have ‑‑ if it had reason to believe he was no longer at that address for some reason, so they tried the next best way of getting there. But that's not what I understand happened. Well, and that's ‑‑ On this record. That's unfortunate. On this record, Your Honor, we don't know that for certain they had his Punjabi address. We can only surmise that that was on the application and that's what they had. Counsel, I don't know what you're asking us to do. We have to decide this case on the record. Yes, Your Honor. On the record, we've got a statute that says send to the alien. If you're saying, well, this is a case where we can't decide whether they did it or not, that's one thing. But I understand we're saying there was a Punjabi address and they elected not to send it to them. Yes, Your Honor. If you look at the excerpts of records on page 103, it shows the approved I-130 application, which is sent to the petitioner, which in this case would have been the brother, Mr. Dharam Singh, and then is indicated to the right, it's a little difficult to read, but it says notice also sent to representative, which would have been Mr. Kwan in this case because he was a representative that filed the I-130. It then goes forward and indicates if you have questions about the visa to contact the consulate directly. Mr. Sikwinder Singh never contacted the State Department, never contacted the consulate, never was inquiring about his visa until he filed an I-485 until after that point actually in 2005. So presumably the visa bulletin is a publicly available document. It's on the Internet. You can go every month. It would behoove you as someone who wants to immigrate to this country, particularly when you're already here illegally, to make sure that when your number comes up that you're ready. If he would have between 2001 and 2003 filed that I-485, he presumably could have immigrated at that time in the United States and become a lawful permanent resident. So what were you citing to? To page 103. I'm looking at it and I'm trying to look. At the top it indicates the address of Dharam Singh, and then towards the right in the second box down notice, it's hard to read, but also sent to representative. Yeah. So that would have been Attorney Kwan. And then in the following box indicates that if you have questions about visa issuance. I'm sorry. So what are we supposed to infer from that? That at that point the petitioner, this was the only address that the State Department was forwarded except for if it was. We're supposed to infer from this document that the State Department only had the petitioner's address and did not have a Punjab address? Not that you have to imply that, Your Honor. Just that the petitioner and his representative were both sent the notice of the I-130. Well, I know that. But again, what are we supposed to infer from that? What is it? So what? Put differently. That basically Mr. Sukwinder Singh knew of his approved I-130, and then it was incumbent upon him to let the State Department know where he was living. Where in the statutes, the regs, the manual, or anyplace else does it say that the burden is on the petitioner to give notice to the beneficiary? Well, presumably the petitioner, since he's petitioning on it. Well, presumably, sure. But where in the statute or the regs or any other governing statute does it impose the burden on the petitioner to advise the beneficiary of what's happening? Well, it makes sense. I mean, I'm not saying that doesn't make sense, but it's not in the statute. Yes. And in this case, Your Honor, the beneficiary wouldn't have received the approved I-130. It only goes to the petitioner because he's saying this is my brother, I want him to come, I'm going to let him know when this is approved, and then presumably I will let him know when his number comes up. So is that State Department practice? That is, in every single I-130 petition, is the practice of the State Department only to advise the petitioner? With regard to these applications, I believe the I-130 is sent just to the petitioner and any legal representative. Okay. And so an alien is never advised to the approval of an I-130, even though the I-130 form identifies the beneficiary and the beneficiary's address. Is that correct? I mean, I don't know the answer. Oh, the I-130 form does, yes, Your Honor. But because you need a person who's saying, I, and later on they're saying, I will financially be responsible for this person, presumably they're in close contact so that they know when their I-130 has been approved. Thank you. Thank you, Your Honor. Yeah. I mean, it's important to recognize that this whole process has two parts. The first part is done with the former Immigration and Nationalization Service, now Homeland Security. That's the petitioning process. And it's true that that document, the approval, is only sent to the petitioner. Thereafter, the documents, everything is transferred to the National Visa Center, which is a State Department entity. And the State Department then begins communicating with the visa applicant. From that point forward, it's the visa applicant who has standing and it's the visa applicant who has interest in the case. And at this point, you know, the government suggested that it's not clear that the State Department ever had the Punjab address. That's just wrong. I mean, it's required. It's a required part of the form. If you don't fill out that part of the I-130, the document will be returned to the petitioner to be completed. And page 112 of the record here clearly indicates that the State Department had his address. Finally, I just want to say this whole thing about not changing his address, you know, when he moved to the United States, that's a complete red herring. His wife remained in Punjab. She's a derivative beneficiary to the I-130. She also could have immigrated to the United States with him as his wife at the same time. She had as much interest in responding to the notice as did he. And finally, Your Honor, I just want to make one other point about this arbitrary and capricious standard because certainly we don't think we have to demonstrate that anything is arbitrary and capricious. The threshold is that under the APA, we have to show that the denial here was arbitrary, capricious, or contrary to law. Our position is simply that the State Department's refusal or failure to send notice to the address that Sukhwinder Singh had provided was contrary to law. That's the standard. If we can meet that, we don't have to show anything further about anything being arbitrary or capricious. Scalia. Counsel remarked that the person who initially filed the I-130 isn't out of the picture when the visa is granted. That person still has a responsibility, a financial responsibility for the person. Why doesn't that give him certain responsibilities also with respect to notifying the person who's been granted the visa? In terms of this case, I think normally he is going to, you know, notify the beneficiary of the approved petition. He has to know when he's coming in. He's responsible for it. True. But thereafter, it's the State Department that communicates directly with the visa applicant. And as you can see from the petitioner's sworn affidavit in this case, he'd immigrated other people. And based on that, he understood that once the I-130 was approved and the file was transferred to the embassy in Delhi or to the National Visa Center, the State Department normally communicates directly with the visa applicant. That was his understanding based on his prior experience. And that's normally the way things operate. But in this case, they chose to communicate directly with his lawyer, the petitioner's lawyer. And so what you're pointing to, Your Honor, about this financial obligation, that's exactly why it's inappropriate to communicate with the petitioner's lawyer. In every one of these cases, there's a conflict of interest between, for a lawyer, between what's best for the petitioner and what's best for the beneficiary. If we're ever going to represent both, we have to sit down and explain to every single client with the beneficiary, we have a potential conflict of interest because the petitioner might be on the hook to pay to support you at 125 percent of the poverty guidelines. We need a waiver if we're going to continue to represent both. You can't simply assume that because a lawyer was representing the petitioner, he's also representing the beneficiary. And that's what the State Department did in this case. Okay. Thank you. Thank you, Your Honor. Thank you, counsel. All right. The case argument is submitted.
judges: Ripple, Rymer, Fisher